UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

AYUB HAJI ABUKAR,

Petitioner,

v.

JOHN ASHCROFT, Attorney General of the United States of America, CURTIS ALJETS, District Director of the Immigration and Naturalization Service, and JAMES W. ZIGLAR, Commissioner of the Immigration and Naturalization Service,

Respondents.

---

Civil File No. 01-242 (JRT/AJB)

**REPORT AND RECOMMENDATION**

Jeffrey J. Keyes and Kevin M. Magnuson, Briggs and Morgan, 2400 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota, 55402, for Petitioner.

Friedrich Anson Paul Siekert and Lonnie F. Bryan, Assistant U.S. Attorneys, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415, and Greg D. Mack, Office of Immigration Litigation, U.S. Department of Justice, P.O. Box 878, Ben Franklin Station, Washington, D.C., 20044, for Respondents.

---

ARTHUR J. BOYLAN, United States Magistrate Judge

Petitioner is seeking a writ of habeas corpus that would (a) bar the United States Immigration and Naturalization Service, ("INS"),[1] from deporting him to Somalia at this time, and (b) cause him to be released from INS detention. Petitioner claims that the INS cannot legally remove him to Somalia until there is a functioning government in that country that can and will accept him. He further claims that the INS cannot legally detain him pending

---

[1] As a result of a recent government reorganization, the agency formerly known as the INS is now known as the Bureau of Immigration and Customs Enforcement, ("BICE"). For now, however, the Court will continue to use the name INS, because that is how the agency has been identified throughout these proceedings.

FILED JUN 1 0 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

his removal, because there is no significant likelihood that the INS will be able to legally remove him in the foreseeable future.

Respondents have filed a "Return, Motion to Dismiss, and Memorandum in Support," (Docket Nos. 25-26), which raises several objections to Petitioner's claims. Respondents contend that (a) this action should be summarily dismissed for lack of jurisdiction, (b) the INS can legally remove Petitioner to Somalia at this time, even though there is no functioning government to accept him, and (c) Petitioner has no right to be released from INS custody pending the completion of his removal.

The matter has been referred to the undersigned Magistrate Judge of the District Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court concludes that Petitioner's habeas corpus petition can properly be entertained, (i.e., jurisdiction does exist), but Petitioner is not entitled to a writ of habeas corpus on either of his two substantive claims for relief. It will therefore be recommended that Petitioner's habeas application be denied, and that this action be dismissed.

## I. BACKGROUND

The underlying facts of this case are not in dispute. Petitioner was born in Somalia in 1981 and lived there for roughly the first ten years of his life. In 1992, he and his family left their homeland because of violent intertribal conflicts. Petitioner initially went to Kenya, but in 1997 he was admitted to the United States as a refugee. He later settled in Minnesota.

In 1999, Petitioner was charged with third degree assault for stabbing a man with a knife during a fight. Petitioner pleaded guilty, and was sentenced to 364 days in jail. Part

of Petitioner's sentence was stayed or suspended, and he was released from jail in October or November 1999.

As soon as Petitioner was released from jail, however, the INS took him into custody and started removal proceedings against him. In March of 2000, an Immigration Judge found Petitioner to be removable to Somalia because of his state criminal conviction. (A copy of the Immigration Judge's decision is included in Respondents' Exhibit 3, [Docket No. 27], at pp. 144-54.) Petitioner appealed that decision, but the Board of Immigration Appeals ("BIA") upheld the removal order in a decision dated November 17, 2000. (Respondents' Exhibit 3, at pp. 168-72.) Petitioner did not seek further review in the Eighth Circuit Court of Appeals, so his removal order became final pursuant to the BIA's decision.

As of February 2001, the INS was still trying to make arrangements to carry out Petitioner's removal to Somalia. On February 9, 2001, Petitioner commenced the present action by filing a habeas corpus petition pursuant to 28 U.S.C. § 2241. In that original petition, Petitioner claimed only that the INS could not legally remove him to Somalia because that country does not have a functioning government capable of accepting his return. The original habeas petition was accompanied by a motion seeking a temporary restraining order that would prohibit the INS from deporting Petitioner during the pendency of this action. (Docket No. 2.) That motion was withdrawn when Respondents agreed not to deport Petitioner while this action is still pending. (Docket No. 6.) Petitioner later asked for leave to amend his petition, and that request was granted. (Order dated April 29, 2002; [Docket No. 17].)

Petitioner's amended petition, (Docket No. 19), which is now before the Court, reiterates his original claim that he cannot legally be deported to Somalia without some

formal consent or acceptance by a functioning Somali government. The amended petition also added a second claim challenging Petitioner's ongoing post-removal-order detention by the INS. Petitioner claims that he should be released from INS custody pursuant to the Supreme Court's holding in Zadvydas v. Davis, 533 U.S. 678 (2001), because the INS will not be able to legally remove him to Somalia (or anywhere else) within the reasonably foreseeable future.

It is important to note that Petitioner is not presently challenging the validity of his removal order per se. Instead, he is challenging the manner in which the INS is planning to execute the removal order. More specifically, Petitioner is claiming that the INS should not be allowed to physically transport him to Somalia, and drop him off there, unless and until some valid governmental authority in Somalia has agreed that he can be left there. According to Petitioner, there is no valid governmental authority in Somalia that can approve his return to that country, because Somalia presently has no government. Respondents acknowledge that "Somalia has been without a functioning central government since 1991." (Respondents' Return, [Docket Nos. 25-26], p. 8.) Moreover, neither party suggests that Somalia is likely to have a functioning central government any time soon.

Respondents claim that there is no need to obtain anyone's consent before sending Petitioner back to Somalia, and that the INS has a plan to repatriate Petitioner that can be executed without the acquiescence of anyone in Somalia. Respondents have filed a declaration by Bruce A. Norum, "a Supervisory Detention and Deportation Officer from the Office of Detention and Deportation in the St. Paul District of the United States Immigration and Naturalization Service," (Docket No. 27; Exhibit 2), which attempts to explain how

Petitioner might be deported to Somalia. According to the Norum declaration, Petitioner will be issued a document called a "Form I-269 (Certificate of Identity)" to be used in lieu of a passport. The INS will then make arrangements to transport Petitioner back to Somalia, by an unspecified route. He will be accompanied, at least part of the way, by at least two INS officials. In the alternative, the INS suggests, it might be possible to have the removal job carried out by something known as the "Justice Air Prisoner Transportation System," which purportedly would lease a plane and somehow fly a large group of Somalis into Somalia and leave them there.

The current record leaves many unanswered questions about the INS's plans for effecting Petitioner's removal. The INS has not indicated who (if anyone) would actually accompany Petitioner into Somalia, nor has the INS offered any guesses about what might happen to Petitioner once he gets there. Instead of providing a clear and specific explanation of how Petitioner will be safely returned to Somalia, Respondents simply say that other Somali aliens have been successfully returned to their homeland in recent years, and that it should be quite feasible to return Petitioner as well.

It is easy to understand why Petitioner is resisting the INS's plan to send him back to a war-torn land that has no functioning government. It is also easy to understand why Petitioner believes the INS is underestimating (or ignoring) how dangerous it will be for him to return to Somalia. Nevertheless, the Court concludes, for the reasons discussed below, that the INS can legally send Petitioner back to Somalia. That leads the Court to further conclude that Petitioner is not entitled to be released from custody pursuant to Zadvydas. It will therefore be recommended that the amended habeas corpus petition be denied.

## II. DISCUSSION

The Court finds this case to be indistinguishable from one that was recently decided by the Eighth Circuit Court of Appeals – Jama v. Immigration and Naturalization Service, No. 02-2324 (8th Cir. May 27, 2003), 2003 WL 21212090. The parties are undoubtedly familiar with Jama, so there is no need to discuss that case in great detail here.[2] Suffice it to say that the facts of Jama are nearly identical to those presented here, and two of the three fundamental legal issues raised in this case were addressed and decided on the merits in Jama. Furthermore, the one issue presented here that was not specifically adjudicated in Jama, namely Petitioner's Zadvydas claim, is directly affected by the Jama decision.

### A. Jurisdiction

In Jama, the Court initially addressed the same jurisdiction arguments raised by Respondents here. The Court of Appeals rejected all of those arguments, and held that the federal habeas corpus statutes do provide a remedy for an alien who is challenging the legality of the INS's plan to remove him. 2003 WL 21212090 at *1-2. It is now clear, pursuant to Jama, that the legality of the INS's plan to remove Petitioner to Somalia can properly be raised and decided in a habeas corpus proceeding such as this one.

---

[2] The attorneys representing the instant Petitioner also represented Mr. Jama when his case was before the Eighth Circuit. The government lawyers representing Respondents in this case also appeared in Jama. Furthermore, Jama arose in this District, and, by coincidence, it was assigned to the same District Court Judge and the same Magistrate Judge who are presiding over the present case.

B. Removal To Somalia

It also is now clear, pursuant to Jama, that the INS can legally deport Petitioner to Somalia without having to obtain any consent or acceptance from any Somali government. The petitioner in Jama presented the same legal arguments that have been raised by Petitioner here.[3] However, the Court of Appeals rejected all of those arguments in Jama, and held that federal law does not require the INS to obtain any pre-removal consent or acceptance from the destination country. In the words of the Court of Appeals:

> "[W]e believe that the 'short answer' to Mr. Jama's assertion (that the INS must obtain prior acceptance before returning him to the country of his birth) is that 'Congress did not write the statute that way.'... [Citation omitted.] Whether it is politically wise, efficient, or considerate of the United States to remove an alien without the prior acceptance of the alien's destination country is, quite simply, a question that lies outside our province."

Jama, 2003 WL 21212090 at *3.

As counsel for both parties well know, the Eighth Circuit's decision in Jama is contrary to this Court's (and the District Court Judge's) understanding of the relevant law. Although this Court still finds Petitioner's arguments to be persuasive, (as did the dissenting circuit court judge in Jama), the Court obviously is bound to follow the current Eighth Circuit position on the issues presented here. Therefore, based solely on the recent panel decision in Jama, the Court concludes that federal law does not require the INS to obtain any consent or acceptance from any governmental authority in Somalia before removing

---

[3] In fact, it appears that much of Petitioner's memorandum in support of his amended petition, (Docket No. 31), was lifted verbatim from the petitioner's brief in the Jama appeal. This observation is not meant to be a criticism of Petitioner's counsel (for lacking originality); the Court is merely emphasizing that this case and Jama are about as close to identical as two cases can be.

Petitioner to that country.[4]

C. Continuing INS Detention

Petitioner lastly claims that the INS cannot continue to hold him in custody pending his removal from this country, because it is unlikely that removal will be completed any time soon. This argument is based Zadvydas v. Davis, supra, which holds that removable aliens cannot be held by the INS indefinitely. According to Zadvydas, federal immigration laws authorize the INS to detain an alien for six months after the entry of a final removal order, but "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." 533 U.S. at 701. If the alien meets his burden of showing that removal is unlikely to occur in the foreseeable future, and the Government does not present sufficient rebuttal evidence, the alien must be released from custody (subject to INS conditions and supervision).

In this case, the six-month removal period established by Zadvydas expired long ago. Petitioner's removal order became final in November 2000, so the six-month presumptive removal period ended in May 2001 – more than two years ago. Petitioner claims that there is "no significant likelihood" that he will be removed to Somalia (or anywhere else) in the "reasonably foreseeable future" because there is no reason to believe that Somalia (or any other country) will accept him back anytime soon. He

---

[4] It is theoretically possible, of course, that the Jama decision could be overturned on en banc review by the entire Eighth Circuit, or on certiorari review by Supreme Court. As of now, however, this Court is bound by the Eighth Circuit's current holding in Jama, which clearly gives the INS the "green light" to remove Petitioner to Somalia at any time.

therefore believes that the INS must release him from custody pursuant to Zadvydas.

Petitioner's Zadvydas claim obviously is predicated on the assumption that the INS cannot legally deport him, to Somalia or elsewhere, without prior acceptance from the destination country. That premise, however, has been rejected. It is now clear, by reason of the Court of Appeals' decision in Jama, that such acceptance is not required. Therefore, Petitioner can be returned to Somalia at any time.

Petitioner is still in this country today only because the INS agreed not to complete his removal while this habeas proceeding is still pending. (Docket No. 6.) If the District Court Judge agrees with this Court's determination that Petitioner can be returned to Somalia without any formal acceptance by a functioning Somali government, (which is what Jama seems to clearly mandate), then this action presumably will be dismissed very soon. After the action is dismissed, the INS will be free to deport Petitioner at any time.[5] The INS presumably will try to expedite the removal process following the dismissal of this action, and Petitioner has offered no reason to believe that the INS will not be able to complete his removal fairly quickly.

---

[5] The Court is aware that a district court in the State of Washington has entered an injunction that generally prohibits the INS from deporting anyone to Somalia. Ali v. Ashcroft, 213 F.R.D. 390 (W.D.Wash. 2003). That injunction, however, does not protect the instant Petitioner from immediate removal, because he is not a member of the certified class of individuals protected by the injunction. Somali aliens who have commenced their own habeas actions challenging removal, (such as Petitioner here), are expressly excluded from the class certified by the Washington district court. Id. at 396 (the certified class consists of "[a]ll persons in the United States who are subject to [final] orders of removal, expedited removal, deportation or exclusion to Somalia,... excluding any person with a habeas petition pending, or on appeal, raising the issue of unlawful removal to Somalia..."). (Emphasis added.)

Petitioner's memorandum in support of his amended petition, (Docket No. 31), repeatedly states (at p. 32) that if Petitioner cannot be removed to Somalia without the consent of a Somali government, then the INS will not be able complete his removal in the reasonably foreseeable future. This implies that if no such governmental consent is required, then the INS should be able to remove Petitioner to Somalia quite speedily. Petitioner admits as much when he says that if he had not brought this action to challenge the legality of his removal, he would have been removed already. (Petitioner's Memorandum, p. 33.) See also Ali, 213 F.R.D. at 396 (noting that [s]ince 1997, 196 Somali nationals have been removed to Somalia"). In any event, in light of Jama, the Court is satisfied that there is indeed a significant likelihood that Petitioner will be removed to Somalia in the not too distant future.

In sum, Petitioner's Zadvydas claim must be rejected because it is based on the erroneous supposition that he cannot be deported without the consent of the destination country. Given the Court of Appeals' decision in Jama, it cannot be said that "there is no significant likelihood" that the INS will be able to carry out Petitioner's removal to Somalia "in the reasonably foreseeable future." Thus, the Court concludes that Petitioner's ongoing post-removal-order detention is permissible under Zadvydas.[6]

---

[6] As the Supreme Court pointed out in Zadvydas, the longer it takes for the INS to remove an alien, the more untenable his ongoing detention becomes. 533 U.S. at 701 ("as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink"). If the INS is for any reason unable to remove Petitioner expeditiously, he might have a more viable Zadvydas claim some time in the future. Therefore, the dismissal of this action should not automatically preclude Petitioner from raising a new Zadvydas claim in some future action.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's amended habeas corpus petition, (Docket No. 19), be DENIED;

and

2. This action be DISMISSED.

Dated: June 10, 2003

ARTHUR J. BOYLAN
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before June 24, 2003.